UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RICHARD VALLE, et al.,

    Plaintiffs,

v.                          CASE NO. 3:22cv17250-MCR-HTC

3M Company,

    Defendant.
_____/

## ORDER

Plaintiffs Richard Valle and Manuel Colon filed suit against Defendant 3M Company for violations of the Florida Uniform Fraudulent Transfers Act ("FUFTA"). ECF No. 1. Pending before the Court is 3M's motion to dismiss Plaintiffs' complaint for lack of personal jurisdiction, improper venue, and failure to state a valid FUFTA claim. ECF No. 13. Having carefully reviewed the motions and applicable law, the motion is due to be granted for lack of personal jurisdiction.[1]

In 2020, Richard Valle and Manuel Colon filed separate complaints containing state law claims against 3M and its Aearo subsidiaries (collectively referred to as "Aearo") for hearing-related injuries allegedly caused by the Combat Arms Earplug version 2 ("CAEv2"). Valle's and Colon's complaints were directly

---

[1] Based on the Court's ruling on personal jurisdiction, it need not consider the other grounds for dismissal.

filed in the Northern District of Florida and are a part of the ongoing multi-district litigation ("MDL") that includes over two-hundred thousand similar claims against the same defendants, all of which have been consolidated for pre-trial proceedings in this district. To date, there have been sixteen bellwether trials and nineteen verdicts, resulting in nearly $300 million in jury verdicts. In July 2022, soon after the bellwether process ended, 3M entered into an indemnification and funding agreement with Aearo, agreeing to pay $1 billion into a trust to resolve Aearo's CAEv2 liability in exchange for Aearo's agreement to indemnify 3M for all CAEv2 related liability imposed against 3M. After finalizing the agreement, Aearo filed a Chapter 11 bankruptcy petition in the Southern District of Indiana, and on the same day, 3M announced its plans to spin-off its highly profitable healthcare business into a separate corporate entity.

Separate from their complaints in the MDL, Valle and Colon also filed a joint complaint in this Court against only 3M alleging that 3M violated the FUFTA and/or has plans to violate the FUFTA in two ways. First, the Complaint alleges that 3M's actions in the bankruptcy coupled with its planned spin-off of its healthcare business violates the FUFTA because it is a fraudulent scheme to hinder and delay payment of CAEv2 claims. Second, the Complaint alleges that 3M's CAEv2 liability and planned spin-off of its most profitable assets will result in 3M's insolvency or

CASE NO. 3:22-CV-17250-MCR-HTC

undercapitalization such that 3M's dividend payments and stock repurchases violate the FUFTA. As a remedy, Plaintiffs seek a permanent injunction to halt further dividend payments, stock repurchases, and the spin-off of 3M's healthcare business. The Complaint asserts that this Court has personal jurisdiction over 3M to provide a remedy because 3M's alleged FUFTA violations involve transfers to 3M shareholders who reside in Florida.

3M moved to dismiss Plaintiffs' complaint for lack of personal jurisdiction. In support, 3M attached a sworn declaration from a 3M executive, which provided the following relevant jurisdictional facts. 3M is a Delaware corporation with its headquarters in Minnesota. The company's executive offices are located in Minnesota. The company does not have any executive officers, bank accounts, or manufacturing facilities in Florida. The company has less than one percent of its global workforce and less than three percent of global sales within Florida. In response, Plaintiffs provided an affidavit from their attorney Ashley Keller in which he stated that 3M is a registered Foreign Profit Corporation within Florida and has offices in Tallahassee, Doral, and Tampa, although Keller did not refute 3M's jurisdictional facts.

Under Rule 8, the complaint must contain a "short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a). A defendant may challenge the court's personal jurisdiction by filing a motion to dismiss. Fed. R. Civ. P. 12(b)(2). To survive a motion to dismiss for lack of personal jurisdiction when no evidentiary hearing is conducted, the plaintiff bears the burden of establishing a *prima facie* case of personal jurisdiction over the nonresident defendant. *Madara v. Hall*, 916 F.2d 1510, 1513 (11th Cir. 1990) (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)). "A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Id.* Accordingly, "[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting *Meier ex rel Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)).

Personal jurisdiction is disputed. ECF Nos. 13 & 18. "A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *AcryliCon USA, LLC v. Silikal*

*GmBH*, 985 F.3d 1350, 1363–64 (11th Cir. 2021) (quoting *Diamond Crystal Brands, Inc.*, 593 F.3d at 1257–58). Thus, the Court must first determine whether personal jurisdiction would be appropriate under the Florida long-arm statute. *See id*. Since the reach of the Florida long-arm statute is a matter of Florida law, the Court will construe the statute as the Florida Supreme Court has. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268 (11th Cir. 2002)). Additionally, "[a]bsent some indication that the Florida Supreme Court would hold otherwise," the decisions of Florida's intermediate courts construing the statute are binding. *Id*.

Under the Florida long-arm statute, a defendant can be subject to either general or specific personal jurisdiction in the state. *See* Fla. Stat. § 48.193(1)(a)-(2); *Samsumg SDI Co., Ltd. v. Fields*, 346 So.3d 102, 105 (Fla. 1st DCA 2022) ("Personal jurisdiction comes in two flavors: general and specific."). To be subject to general personal jurisdiction, the defendant must be "engaged in substantial and not isolated activity" in the state. Fla. Stat. § 48.193(2). If a defendant is subject to general jurisdiction, the claim need not arise from the defendant's activity within the state. *See id*. In contrast, to be subject to specific personal jurisdiction, the plaintiff's cause of action must arise from certain enumerated contacts the within the state. *See* Fla. Stat. § 48.193(1)(a)(1)-(9).

In analyzing whether the Court has general jurisdiction, "the reach of § 48.193(2) extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010)) (internal alterations omitted). Thus, case law interpreting the bounds of general personal jurisdiction under the Due Process Clause equally apply to interpreting the bounds of § 48.193(2). *See, e.g., Fraser*, 594 F.3d at 846 (citing *Woods v. Nova Companies Belize Ltd.*, 739 So.2d 617, 620 (Fla. 4th DCA 1999)). To assert general personal jurisdiction over a nonresident corporation in accordance with due process, the corporation must have such "continuous and systematic" contacts with the forum state "as to render [the corporation] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "A corporation's place of incorporation and its principal place of business are 'paradigm'" forums for properly asserting general personal jurisdiction. *Carmouche*, 789 F.3d at 1204 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). Outside of these two examples, general jurisdiction will only be proper in "exceptional cases." *Id*. (citation omitted). Simply having significant sales and manufacturing activities within the forum state is not enough to render the

corporation at home within the forum state. *See Daimler*, 571 U.S. at 124, 139 (ruling that general personal jurisdiction could not be asserted over a corporation that had significant sales and manufacturing facilities within the forum state).

Here, 3M is incorporated in Delaware and has its principal place of business in Minnesota, where its corporate executive offices and research facilities are located. Clearly, 3M has sufficient contacts to be at home in Delaware and Minnesota. *See id.* at 137. In contrast, 3M may inevitably have shareholders in Florida but it does not have manufacturing facilities or bank accounts in the state. None of its executive management is located in Florida. Less than one percent of its global workforce is located in Florida and less than three percent of its sales are in Florida. These facts are undisputed, and as a result the Court finds that it lacks general personal jurisdiction over 3M under the Florida long-arm statute. *See id*.

In the alternative, Plaintiffs argue that the Court has specific personal jurisdiction under the statute because 3M's alleged FUFTA violations are tortious acts committed in Florida. ECF No. 18. Additionally, Plaintiffs argue that the Court has jurisdiction under the statute because 3M's allegedly fraudulent dividend payments and stock repurchases benefitting Florida shareholders are considered "operating a business" in Florida. The Court disagrees with both arguments.

The Florida long-arm statute provides specific personal jurisdiction over a foreign defendant when the plaintiff's cause of action arises from, among other things, the defendant "operating. . . a business" within the state or "committing a tortious act within th[e] state." Fla. Stat. § 48.193(1)(a)(1)-(2). To qualify as "operating a business," the defendant's activities "must be considered collectively and show a general course of business activity in the state for pecuniary benefits." *Citicorp Ins. Brokers (Marine), Ltd. v. Charman*, 635 So.2d 79, 81 (1st DCA 1994) (citation omitted). To qualify as a "tortious act," the defendant must commit a tort as defined by Florida law. Significantly, "[t]he arising from prong . . . requires that there be a nexus or a substantial connection between the cause of action and the defendant's [qualifying] activities within the state." *Samsung SDI Co., Ltd. v. Fields*, 346 So.3d 102, 106 (Fla. 1st DCA 2022) (internal citations and quotation marks omitted).

For starters, Plaintiffs' argument under the "tortious act" prong of the statute is rejected, as Florida intermediate courts have consistently held that FUFTA violations are not "tortious act[s]" for purposes of the Florida long-arm statute, *see Edwards v. Airline Support Group, Inc.*, 138 So.3d 1209, 1211–12 (Fla. 4th DCA 2014) (citing *Brown v. Nova Info. Sys., Inc.*, 903 So.2d 968, 969 (Fla. 5th DCA 2005); *Beta Real Corp. v. Graham*, 839 So.2d 890, 891–92 (Fla. 3d DCA 2003)),

and there is no indication that the Florida Supreme Court would hold otherwise. 3M's alleged FUFTA violations, therefore, are not "tortious acts" under the statute based on binding Florida precedent.[2] *See, e.g., Edwards*, 138 So.3d at 1209.

On the question of whether 3M is "operating a business" within the state, the Court finds that it is since it has consistent sales, employees, offices, and shareholders in Florida, "show[ing] a general course of business activity in the state for pecuniary benefits." *Citicorp Ins.*, 635 So.2d at 81. The problem for Plaintiffs, however, is that their FUFTA claims do not "aris[e] from" 3M's business operations in the state. *See id.* Plaintiffs assert two FUFTA claims: (1) that the bankruptcy and spin-off are a part of a scheme to hinder or delay CAEv2 creditors; and (2) that 3M will be severely undercapitalized or bankrupt such that its spin-off, stock repurchases, and dividend payments should be halted to protect creditors. *See* ECF No. 1. The decisions that form the basis of these claims did not and/or will not occur

---

[2] Plaintiffs argue that the lower court decisions have "uncritically adopted. . . nonsensical analysis" that the Florida Supreme Court would not follow. ECF No. 18 at 13 n.10. The Court disagrees. The lower court decisions were based on sound reasoning that FUFTA violations are not torts because they do not create a claim for damages. *See, e.g., Edwards*, 138 So.3d at 1212. This reasoning has been consistently followed over many years by multiple different intermediate appellate courts, *see, e.g. Brown*, 903 So.3d at 696; *Beta Real Corp.*, 839 So.2d at 891–92, and Plaintiffs have not cited, and the Court has not found, a Florida court decision supporting Plaintiffs' contrary construction of the statute. ECF No. 18 at 10-13 (citing cases applying Georgia law and cases applying tort law principles for choice of law analysis but failing to cite cases construing the Florida long-arm statute). Therefore, the intermediate appellate courts' consistent decisions are binding. *See United Techs. Corp.*, 556 F.3d at 1274.

in Florida. Regarding the first claim, the decisions related to the bankruptcy and spin-off were made at 3M's corporate headquarters in Minnesota. The bankruptcy itself was filed in Indiana, and the spin-off involves separating a Delaware corporation. Regarding the second claim, the decisions to issue dividends and stock repurchases occurred in Minnesota and those decisions affect millions of shareholders around the world rather than just shareholders in Florida. Notably, Plaintiffs do not seek an injunction to stop only those transfers to Florida shareholders; Plaintiffs seek an injunction stopping all transfers to all shareholders around the world. But even if fraudulent, 3M's transfers only relate to a small number of its shareholders who happen to live in the Florida and importantly, those internal decisions were made in Minnesota and were in no way directed at Florida shareholders specifically. Accordingly, the Court finds that 3M's business operations in Florida do not have a sufficient "nexus" to Plaintiffs' claims, meaning specific jurisdiction is improper. *See Samsung*, 346 So.3d at 102.

In their counterargument that jurisdiction is proper, Plaintiffs cite distinguishable cases in which Florida courts have held that specific personal jurisdiction over a foreign defendant was appropriate when the foreign defendant made financial transactions directed at the state of Florida and the claims arose from only those Florida transactions. *See Am. Finance Trading Corp. v. Bauer*, 828 So.2d

1071, 1073–74 (Fla. 4th DCA 2002); *Mears v. Int'l Precious Metals Corp.*, 421 So.2d 743, 744 (Fla. 4th DCA 1982). In contrast, Plaintiffs' claims in this case primarily concern transactions that bear no relation whatsoever to the state of Florida. 3M did not make any transaction directed to the state of Florida. It issued dividends to all of its shareholders regardless of where those shareholders resided. 3M did not target Florida shareholders or take specific actions directed at Florida. Plaintiffs have failed to cite, and the Court has not found, a case in which *specific* personal jurisdiction under the Florida long-arm statute was extended to halt thousands of transactions that occurred wholly outside the state. Such an extension of Florida law would improperly degrade the distinction between specific and general jurisdiction under the statute. The Court declines to do so, especially considering that Florida courts "strictly construe Florida's long-arm statute to guarantee compliance with due process requirements." *Samsung*, 346 So.3d at 105.

Thus, the Court lacks both general and specific personal jurisdiction under the Florida long-arm statute. As such, Plaintiffs have failed to present a *prima facie* case for personal jurisdiction, and no further Due Process analysis is necessary. *See Smith v. Trans-Siberian Orchestra*, F. Supp. 2d 1310, 1312 (M.D. Fla. 2010). Similarly, since Plaintiffs have failed to present a *prima facie* case for personal jurisdiction and there are no disputed jurisdictional facts, jurisdictional discovery is not warranted.

CASE NO. 3:22-CV-17250-MCR-HTC

*See Central States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) ("At a minimum, the plaintiff must establish a colorable or *prima facie* showing of personal jurisdiction before discovery should be permitted."); *see also Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1216 (11th Cir. 2007) (explaining that jurisdictional discovery should not be granted "to allow the plaintiff to look for what the plaintiff should have had—but did not—before coming through the courthouse doors"); *Wolf v. Celebrity Cruises, Inc.*, 683 Fed. App'x 786, 792 (11th Cir. 2017) (quoting *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 730 (11th Cir. 1982)) ("The right to jurisdictional discovery is a qualified one, available 'when a court's jurisdiction is genuinely in dispute.'").[3]

Accordingly,

1. 3M's motion to dismiss, ECF No. 13, is **GRANTED** due to lack of personal jurisdiction.
2. Plaintiffs' request for jurisdictional discovery, ECF No. 18 at 30, is **DENIED**.
3. Plaintiffs' complaint, ECF No. 1, is **DISMISSED**.

---

[3] Plaintiffs never submitted a formal motion for jurisdictional discovery, and instead, buried the request in its response to 3M's Motion to Dismiss. ECF No. 18 at 30. Such a request is procedurally deficient, serving as an additional independent basis to deny jurisdictional discovery. *See United Techs. Corp.*, 556 F. 3d at 1280–81; *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1339 (S.D. Fla. 2016).

CASE NO. 3:22-CV-17250-MCR-HTC

4. Plaintiffs' motion for a preliminary injunction, ECF No. 5, is **MOOT**.

5. The clerk is directed to **CLOSE** the case.

**DONE AND ORDERED** this 22nd day of December 2022.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**